Good morning, Illinois Appellate Court, 1st District, 3rd Division is now in session. The Honorable Justice Nathaniel House is now presiding. Case number 19-1693, People v. DeQuine Pickett Hargrove. Good morning, ladies and gentlemen. My name is Nathaniel House. I'm a judge of the Illinois Appellate Court and presiding over this case with me are Justices Margaret McBride and Eileen Burke. We're going to proceed today under special procedure due to COVID crisis. We're going to allow each side to have 10 minutes of uninterrupted presentation, beginning with the appellant. After each side gives their 10-minute presentation, the judges will have an opportunity to ask questions. The appellant will be allowed to reserve two minutes for rebuttal. Do you have any questions about how we're going to proceed today? Okay. With the parties who are going to make a presentation, please state their names and the parties they represent. Sydney Warda from the DePaul Appeals Clinic for Appellant DeQuine Pickett Hargrove. Okay. And you, Mr. Appellee? Assistant State's Attorney Tyler Cox on behalf of the people of the state of Illinois. Okay, thank you. Does anyone have any questions about how we're going to proceed? If not, we can allow Ms. Warda, please proceed when you're ready, Ms. Warda. Okay. Thank you, Justice. Good morning. I would like to please reserve two minutes for rebuttal. The state here failed to prove Mr. Pickett Hargrove guilty beyond a reasonable doubt of aggravated unlawful use of a weapon because they failed to prove that Mr. Pickett Hargrove ever possessed a gun. We respectfully ask that this court reverse his conviction. At trial, the state offered the testimony of Officer Cunningham. Officer Cunningham testified that he and other officers approached four black men as they were walking along Lake Street. The four men ran, and Mr. Pickett Hargrove and another of the young men ran across Pulaski and into an alley that was parallel to Lake Street. The officer testified that as the two young men were running, he saw Mr. Pickett Hargrove throw a silver gun under a minivan that was parked in a vacant lot adjacent to the alley. This was the only evidence the state offered to show that Mr. Pickett Hargrove possessed a weapon. But this testimony was not credible. It was not credible because it was not corroborated by the officer's own arrest report, where he did not state that he saw Mr. Pickett Hargrove possess a gun. Further, neither the recovered gun nor any physical evidence tying Mr. Pickett Hargrove to the recovered gun was ever presented at trial. Finally, the officer's own body camera footage contradicts the officer's testimony and raises serious doubts about whether Cunningham witnessed what he testified to, and in light of this, the state failed to meet its burden. Again, when Cunningham testified, he said that he saw Mr. Pickett Hargrove throw a silver gun under a minivan, and he heard the gun sliding across the ground. However, in his arrest report that the officer wrote hours after the incident, he did not see a gun, but rather an object. While it's not reasonable to expect an officer to include every trivial detail in an arrest report, this was not a trivial detail. Whether Officer Cunningham saw Mr. Pickett Hargrove throw a gun was the most important detail in this case, and it was the basis upon which Mr. Pickett Hargrove was convicted. If the officer had seen a silver gun and had heard it sliding along the ground, he would have included that in his arrest report. The addition of critical details to the officer's testimony much later in time raises serious doubts about whether he saw Mr. Pickett Hargrove with a gun at all. The weakness of this testimony is magnified by the fact that neither the recovered gun nor any physical evidence tying Mr. Pickett Hargrove to the gun were ever presented in court. There was a gun recovered, and it should have been admitted, but it was not. The evidence could have corroborated the officer's testimony if it in fact had supported what the officer had said at trial. The state's failure to produce this evidence that it had in its possession to support the impeached testimony of the officer raises a reasonable inference that Mr. Pickett Hargrove didn't possess the gun. Finally, Officer Cunningham's body camera video also raises serious doubts about Mr. Pickett Hargrove's possession. The gun shows that Mr. Pickett Hargrove and another young man in a red sweatshirt running toward and through an alley. However, the video shows that when Mr. Pickett Hargrove and the other young man were running past the minivan at the point at which Officer Cunningham says he saw the gun being thrown, neither Mr. Pickett Hargrove or the other young man or the minivan were visible from where Cunningham was at in the alley. The two young men had ran too far ahead and had already turned left into the vacant lot and were not visible. Further, the officer's view of the minivan was obstructed by a large, solid wooden fence and vegetation. Additionally, the video shows that there was another officer who was closer to the young men during the foot chase. However, neither the officer's testimony nor his body camera video were offered in court, despite the fact that that officer was better situated to see the young men as they ran past the minivan. In light of what the video shows, Cunningham could not have seen what he testified to see, and the recovered gun could have just as easily been in the possession of the other young man. Cunningham's testimony that he saw Mr. Pickett Hargrove possess a weapon was not credible because it was not corroborated by his arrest report, which was written much closer in time to the incident and did not make a mention of Mr. Pickett Hargrove with a gun. It also was incredible because the officer's body camera video showed that he could not have seen what he testified to seeing. When the two men were running past the minivan, his view of them was obstructed. In light of the lack of credibility of the officer's testimony and the lack of any physical evidence tying Mr. Pickett Hargrove to the recovered gun, the state did not prove that he possessed his weapon beyond a reasonable doubt. We respectfully ask that this court reverse his conviction for aggravated unlawful use of a weapon. Thank you. Justice Burke, do you have any questions? I do. Good morning, Ms. Huerta. How are you today? I'm good. How are you? Good. Good for you, getting your first argument out of the way. Okay, so your argument seems to hinge on that the trial court made the wrong determination regarding the credibility of Officer Cunningham. Is that correct? Yes, Justice. In light of the video and the contradiction of the arrest report. So it wasn't a contradiction so much as he did say in the report that he saw him throw an object, right? And then later reports were more detailed with regard to what the object was. Is that correct? Yes, that is correct. And a gun is within the broad definition of what an object is. However, you know, it's, it's, it's not reasonable that an officer who saw someone throw a gun wouldn't put that in an arrest report. It was the same place, though, and the same people. And it was the so the contradiction that you're focusing on is solely on the fact that the description didn't adequately lay out that it was a gun, right? It wasn't, it wasn't that it was a different time, a different place, the object was somewhere else. All of that. All of those details were consistent, correct? Yes. However, I think that the existence of the other young man who was sort of running the same path as Mr. Pickett Hartgrove makes that discrepancy pretty important. Either he saw the gun when they were running or he didn't. And if he didn't, then the gun could have been in the possession of the other young man. And I think the video also supports that. And the the gun was recovered within moments of defendant being detained, correct? The defendant was detained in a in a yard on Maypole and the gun was recovered by other officers. I'm not really sure exactly the time, the amount of time in between. It was probably like minutes. OK, thank you. I have no other questions. Thank you, Justice. Justice McBride, do you have questions? I do. As far as the arrest reports, is there any indication in the record that these officers didn't file supplementary reports? You know, normally the the officers file an initial arrest report, but then they file supplementary reports where they include, you know, significant details. Is there any indication in the record that they didn't do that or it's just absent? Um, as far as as far as I can recall, there was no supplemental arrest report included in that in the record. OK. And then as far as the video, you have argued that it's not possible for the officer to have seen an object being thrown under the minivan. And you say it based on your review of the video, correct? Yes, Justice. So what should we look at in that video? The the body cam that is there a particular, you know, they they have like a number indications like during the trial, I believe that they were stopped at certain points. Isn't that correct? Yes, ma'am. Well, what would you direct us to that would substantiate what you're arguing that the officer couldn't possibly have seen this person discarding the gun under the minivan? We'll look at it. I mean, so we can. Determine this, but where would you direct us to or tell us why you're saying that it's impossible for him to have seen this? Well, I can I can direct you to the timestamp, but, you know, I it's it's at six forty three forty five. It was how long was the body cameras at 40 minutes, about 40 minutes or something or 40. I'm sorry. No, it wasn't 40 minutes. I apologize. More like 40 seconds or something. I don't know. Yeah, it was very quick from from the point at which, you know, the officers approached the four young men to the point at which I guess the video was played at trial was pretty short. I mean, the video shows that the two young men run across the street and officer Cunningham and another officer follow them through the alley. By the time that that officer Cunningham sort of enters the alley, the two young men are not visible anymore. They had already run through the alley and turned left into the vacant lot where the minivan was parked. And based on that and based on. The fact that on the left side of the alley, there's a large fence and like like vegetation and bushes that block the view of the minivan, I believe the video contradicts the testimony. All right. Is there also a video of the police officers actually retrieving an object out from under the van and it's visible as a gun? Yes, there are other body camera. Other officers like body camera footage that were provided in the record, but they weren't played at trial. Okay, but they're there. They show actually the recovery of a weapon under a minivan. Don't they? Yes. We're not arguing that there was no gun, just that, you know, it wasn't in the possession of his thoughts being thrown. He couldn't physically see it. Yes. All right. And the, the officer did testify, didn't he, about at some point during his testimony, he pointed out the video, the minivan, it's kind of a blurry object. Do you recall that? Yes. Okay. You mentioned in your brief that, or you argued today, that they didn't produce the gun. And therefore, that's a reasonable doubt. But there's an indication, isn't there, that this gun physically exists? It was inventoried in the normal course. And it's not like it wasn't ever recovered and inventoried, is there? No, I mean, no, there's no indication that there was, that it wasn't recovered or wasn't inventoried. However, the fact that, that the gun wasn't presented at trial, nor any physical evidence tying Mr. Pickett-Hartgrove leaves only this, this moment in time that the officer testified to, which, you know, the arrest report doesn't corroborate and the video tends to contradict. And so without that physical evidence, you know, I don't. What would that physical evidence do if they actually just brought the gun in? How does that help your case? Well, you know, I, the officer wrote in his arrest report that he saw an object and then it became a silver gun. Well, not, not all guns are even silver. And so I, I think that. And there is no evidence here about that, that the actual gun recovered was silver. There wasn't any testimony really was there about that? I believe that the officer, like outside of the officer's testimony and the arrest report, I don't believe that there was any indication of, of like what the gun looked like further than that. Recently, there was a case and the state cited it, people versus Bobo. And, and the argument was made like you're making here that they should have produced the gun at trial. And I think justice Simon wrote the decision and rejected that argument. How, how do you, how do you tell us to reject that case? That first district case? Sure. I think Bobo is quite different from this case because the testimony of the witness in that case that, you know, the sole testimony that was enough for conviction was like way more credible than the testimony here in Bobo. There wasn't a chase that took place. The officer testified that he saw the defendant shaking someone and pointing a gun at their head and other officers were there and drew their weapons. The situation also took place at 10 a.m. So while here we have a discrepancy in the arrest report and a video that tends to contradict in Bobo there, the officer's testimony was more credible. And so, you know, while no physical evidence was necessary there or here, there, the testimony was enough to convict. But here it was incredible. Thank you. I don't have any other questions. Thank you, Justice. I just have a couple. This incident occurred early in the morning, between 1.30 and 2 o'clock in the morning. Isn't it plausible that while the officer is engaged in this dangerous chase, chasing people down dark streets, that he saw him throw something under the van? He may not necessarily know what that object is, but he saw an object being thrown. And as he's writing his narrative police report, he said, I saw an object. And then later on, they go back and they check and it is a gun. Isn't it plausible that that's all there is to it? He saw an object. And that's basically writing, honestly, I saw an object. And at the time I saw it, I didn't know it was a gun, but I went back later and saw it was a gun. Isn't that a plausible explanation for the police report not saying I saw the gun being thrown? Yes, but if that's the case, then he didn't see him with the gun. And I think the circumstances around the chase, like you said, it being so late at night, they're moving quickly. The video shows that the two young men were sort of far ahead, that the gun could have just as easily been in the possession of the other of the other young man. It could have been there already, but that's circumstantial. And the child just heard everything and said, I'm finding it belongs to the something of the van. And we looked under the van, there's a gun. I'm making a finding that the defendant had it. Now, how do we go against that? Taking the the arrest report and the fact that the officer either didn't feel confident enough to say that he saw a gun when he was writing the arrest report, combining that with the video, which shows that. Which tends to show that the officer couldn't have seen what he had testified to, combined with the fact that there was another officer who was closer in the chase that could have seen the young men as they ran past the minivan. I think taking those things together. Mr. Pickett Hartgrove, I mean, there's a reasonable doubt that he didn't possess that young man. All right, that's all I have. Does anyone else have any other questions? If not, we'll move on to Mr. Cox. Mr. Cox, you may proceed when you get when you're ready. Thank you, Your Honor. May it please the court. Assistant State's Attorney Tyler Cox, on behalf of the people of the state of Illinois, urging this court to affirm the defendant's conviction for aggravated unlawful use of a weapon where the people proved him guilty beyond a reasonable doubt. Defendant was proven guilty in this case based on the evidence, including the testimony of Officer Cunningham, as well as a body worn camera from Officer Cunningham. Viewing this evidence in the light most favorable to the people, defendant was properly convicted of Aggie UW in this case. First, the circuit court properly relied on the testimony of Officer Cunningham, where he testified credibly and consistently about the chase that led to the defendant's arrest, the defendant's possession of a gun and the recovery of that gun. Officer Cunningham saw the defendant originally when he was when Officer Cunningham was still in his police vehicle. He was with other individuals. The defendant was. And eventually the officer gives chase. Obviously, he testifies to the defendant throwing a gun underneath the unoccupied minivan. And eventually that gun is recovered after the defendant is eventually detained. Obviously, there was a stipulation as required. The defendant not have the proper licensure and based on all the evidence provided by Officer Cunningham, especially when viewed in the light most favorable to the people, the defendant was properly convicted of aggravated UW. Despite defendant's contention that he impeached Officer Cunningham, the circuit court properly relied on the testimony after finding him credible. Regarding the arrest report, the lack of details in the arrest report does not render the officer's testimony unreliable or incredible. As Officer Cunningham explained, it was just a summary of the facts at that point, not a detailed, fully comprehensive narrative about everything he observed and experienced that day. There's nothing in the arrest report that was inconsistent with what Officer Cunningham testified to at trial. Furthermore, even if there were any inconsistencies between the arrest report and Officer Cunningham's testimony, those were properly resolved by the court as trier of fact in this case. The credible testimony of Officer Cunningham alone was enough to convict the defendant beyond a reasonable doubt. However, there is more than just the testimony in this case. There is also the corroborating video from Officer Cunningham's body-worn camera. The video in this case shows Officer Cunningham's entire experience with this particular incident from the time he's in the vehicle before seeing the defendant all the way through to after the defendant is eventually detained by other officers. Given the common sense limitations of the body-worn cameras in this case, it does not show everything that Officer Cunningham saw, heard, or experienced that day. For example, clearly the body-worn camera was worn at the chest level of the officer. The chest level camera could not see everything the officer saw that day. Furthermore, a lot of the sound that's played on the body-worn camera is breathing, footsteps, muffled noises, things like that coming from the camera. Whether or not there is an officer with a better view of the incident is entirely irrelevant in this case. There's no requirement that the officer with the best view be the one to testify. The Circuit Court properly relied on the credible testimony of Officer Cunningham in this case, and viewing that evidence in the light most fair rule to the people, he was properly convicted of Ag UUW. Furthermore, the video does not exonerate the defendant, importantly. It does not show the defendant clearly without a gun in this case. It does not show the defendant running past the minivan without throwing a gun underneath the minivan. This video speaks for itself. It obviously does not prove the defendant guilty beyond a reasonable doubt, but it does corroborate Officer Cunningham's version of the events of that day. Finally, as the defendant acknowledges in his brief, people were not required to present the gun at trial in order to convict the defendant of Ag UUW. There is no argument that the inventory procedure was wrong. There's no argument that the object that was recovered from underneath the minivan was actually a gun in this case. Simply put, there's no requirement that the people needed to present the gun in order to prove that defendant possessed the gun on the night in question. Based on the evidence, including the testimony of Officer Cunningham, as well as the body-worn camera, especially when viewed in the light most favorable to the people, this evidence overwhelmingly proved the defendant guilty of Ag UUW beyond a reasonable doubt. We ask you affirm his conviction. Thank you. Justice Burke, do you have any questions?  Justice McBride? A couple of questions. Ms. Warda argues that this video is inconsistent with the officer's testimony and that it suggests that he couldn't have seen the defendant throwing this object or gun underneath the car, according to the way the video was filmed. What do you say to that? I would argue the video is not inconsistent at all. It's much like the arrest report, it's merely less detailed. Obviously, the point of view of the video is different than what Officer Cunningham saw, what he heard is different than what Officer Cunningham is depicting on the video. There are so many factors that are different on the video than there are from what Officer Cunningham could see or hear or experience that night, so it's really less detailed, not inconsistent. Okay. But it is his video, it's his body cam that we're watching, isn't it? That is correct. However, obviously, even as an example from Officer Cunningham's body-worn camera at the very beginning of it, you see he's in the car and all you see is the dashboard. Clearly, Officer Cunningham could see more than the dashboard when he was riding in the vehicle. All right. Then you said that there's really no inconsistency in his testimony with his actual testimony and the arrest report, but isn't it true that he testified that he saw him throw a gun? He didn't testify that I saw him throw an object. Isn't that correct when he testified in court? That is correct, Your Honor. So isn't that inconsistent? No, as defendant acknowledges, a gun is an object. And in this case, the object was a gun. He saw the gun. He went back and recovered a gun. There's every indication that this was, in fact, a gun in this case. Well, there's no testimony. Is there any rehabilitation that this object was later reported in a subsequent case report that he observed a gun being thrown? No. I mean, there were no supplemental reports introduced at trial. However, there's no indication. I'm sorry. Go ahead. Sorry. There's no indication that the standard procedure of filing supplemental reports was not followed in this case. In the video, can you see at some point this minivan? Yes, you can. And it's pointed out, but it's blurry, isn't it? Because the officer is running by it, it is a little bit blurry. However, in my opinion, it's pretty clear it's a minivan. A minivan. And there was a video introduced at trial that actually showed the recovery of the gun under the minivan. Is that correct? I don't believe the video of the recovery was actually introduced at trial. It was alluded to during cross-examination of the officer, but I don't think it was actually introduced. Oh, all right. Because I did read the record, and I thought there was certainly testimony that one of the videos showed the recovery. But was there some indication that at the end of the body cam of Officer Cunningham, he says something like, go back or something and look? I don't know. What was that about? Yeah. When Officer Cunningham gets back to his vehicle over the radio, you can hear him say, walk it back. I think he dropped it. So there is a pointing out. He dropped it, not he threw it? Yes, that's what he said on the video. All right. I don't have any further questions. All right. Thank you. It's been covered adequately. I don't have any questions either. Thank you. Ms. Water, you may take a couple of minutes for rebuttal. Okay, thank you. I just quickly want to mention the portion of the video where you can hear someone say, walk it back. That wasn't played at trial. There's no indication that the judge considered that portion of the video when making his decision. And even if it was valid evidence, the officer still didn't put that he saw a gun in the arrest report. The arrest report is inconsistent, and he was impeached by it. Whether or not Mr. Pickett-Hartgrove had a gun and whether or not Officer Cunningham saw him with a gun is the only evidence that proves him guilty of this charge beyond a reasonable doubt. The fact that he didn't put that there was a gun in the arrest report really leads to a reasonable inference that he didn't see him possess this weapon. And based on that, we ask that this court reverse his conviction. Thank you. Thank you. Any questions based on what we just heard? If not, we'll take this matter under advisement. I want to thank you, Ms. Water, for your participation in this program for the Supreme Court. And Mr. Cox, I know you work with a student as well. Thank you for working along. We will take this under advisement. Both parties did very well with oral argument today. We appreciate it. The briefs were well done, and the matter will be – the order will be issued in due course. Thank you.